## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| BENCO DENTAL SUPPLY CO. and BIRCH 59 PPO LLC, d/b/a PPO PROFITS,<br><br>Plaintiffs,<br><br>v.<br><br>BRIANA GOODPASTURE,<br><br>Defendant. | CIVIL ACTION NO. 2:26-cv-992<br><br>JURY TRIAL DEMANDED |

## COMPLAINT

Plaintiffs Benco Dental Supply Co. ("Benco") and Birch 59 PPO LLC, d/b/a PPO Profits ("PPO") (collectively, "Plaintiffs"), hereby file this Complaint against Briana Goodpasture, and aver as follows.

## NATURE OF THE CASE

1.       This is an action for injunctive relief and damages arising from Ms. Goodpasture's willful misappropriation of confidential information and trade secrets belonging to Benco and/or PPO, in violation of her employment agreements with both Benco and PPO, and a breach of the non-compete and non-solicitation provisions of the same agreements.

2.       Ms. Goodpasture was employed by both Benco and PPO, serving as a team lead with PPO and a practice coach with Benco.

3.       In anticipation of and immediately following her termination by Benco and PPO, Ms. Goodpasture downloaded over 13,000 files from PPO's cloud-based network, including confidential and proprietary information such as, but not limited to, customer lists, customer

revenue information, revenue overviews, templates, fee schedules, meeting notes, onboarding information, and training materials and videos.

4.    Plaintiffs audited Ms. Goodpasture's PPO's cloud-based network and learned of her misconduct.

5.    While employed at Benco and PPO, Ms. Goodpasture created and operated her own competing company, Dental Billing Hub ("DBH"). Ms. Goodpasture has already engaged one of PPO's and Benco's clients while still employed at PPO and Benco and is attempting to solicit additional clients to divert to her competing company.

6.    Injunctive relief is necessary to prevent further misappropriation of PPO's and Benco's trade secrets and violation of Ms. Goodpasture's employment agreements.

## PARTIES

7.    Benco is a corporation organized and existing under the laws of Delaware, maintaining a principal place of business at 295 Center Point Blvd., Pittston, Pennsylvania 18640.

8.    PPO is a Delaware limited liability company, maintaining a principal place of business at 295 Centerpoint Blvd., Pittston, Pennsylvania 18640.

9.    Briana Goodpasture is a citizen of the Commonwealth of Pennsylvania, last known to reside at 100 Vista Road, Jenkintown, Pennsylvania 19046.

## JURISDICTION AND VENUE

10.    This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331 because Benco's claim against Ms. Goodpasture arises under 18 U.S.C. §§ 1831, *et seq.*, the Defend Trade Secrets Act.

11.    This Court has jurisdiction over Plaintiffs' remaining claims pursuant to 28 U.S.C. § 1367 because those claims arise from the same nucleus of operative facts that provide the basis

for Plaintiffs' claim under the Defend Trade Secrets Act, and those claims therefore are part of the same case or controversy.

12.    Venue is this Court is proper pursuant to 28 U.S.C. §§ 1391(b)(1) and (2) because Ms. Goodpasture resides in this District and a substantial part of the events or omissions giving rise to the claims occurred in this District.

## FACTS

13.    PPO is a Revenue Cycle Management ("RCM") company that provides services such as fee negotiation, claim processing, payment hosting, appeal of claims denials and billing services to dental companies. PPO acts as a business associate of its dental practice clients.

14.    Benco is a dental supply company with over 1,500 employees nationwide. Benco has 3 regional showroom locations and five distribution centers servicing more than 30,000 dental professionals in all 50 states.

15.    Benco also provides, as relevant here, revenue analysis consultation. This is a virtual "coaching" service that determines various ways a dentist can increase their revenue.  This service can lead to additional "in-office coaching" services, that assist dentists in increasing profitability by improving scheduling, billing, clinical, operational and other practices.

16.    In October of 2023, the owners of Benco purchased PPO, and operate PPO as a standalone entity.

17.    Benco provides certain shared services to PPO, including information technology services.

### Ms. Goodpasture's Employment with PPO Profits

18.    On January 22, 2024, Ms. Goodpasture was promoted to Team Lead, Account Management with PPO.

19.     On February 5, 2024, as a condition of and in consideration for her promotion, Ms. Goodpasture signed a PPO offer letter and PPO Profits Restrictive Covenant and Confidentiality Agreement (the "PPO Agreement"). A true and correct copy of the PPO Agreement is attached hereto as Exh. A.

20.     PPO expends substantial time, effort and money to attract, develop, service and maintain relationships with its customers. PPO's goodwill and business relationships with its customers are some of its most valuable assets. PPO considers information about its customers— such as the size of their practice, past purchases, supply and equipment needs— to be confidential and trade secret business information.

21.     PPO's internal training and operational materials, including information about onboarding customers, assessing RCM issues, and training its employees, are also confidential and trade secrets. As a team leader, Ms. Goodpasture was privy to sensitive and confidential information about PPO's customers as a result of her relationship with customers and access to information on PPO's systems.

22.     PPO uses G-Suite, a suite of cloud-based computing, productivity, and collaboration tools.

23.     G-Suite provides global network storage, individualized network storage, calendar, and email communication tools to PPO.

24.     PPO's trade secrets and critical client and training documents are located on its G-Suite network, which are not readily accessible to the public and were only accessible to Ms. Goodpasture during the term of her employment.

25.     PPO takes reasonable measures to protect its confidential information, including by maintaining information security protocols, auditing network access, password protections and

contractually obligating employees to maintain the confidentiality of PPO's confidential information.

26.    PPO derives independent economic value from its confidential information and trade secrets being kept secret. Unauthorized access to PPO's confidential information and trade secrets would cause irreparable harm to PPO's business.

27.    As a condition of Ms. Goodpasture's employment with PPO, she signed the PPO Agreement, which required her to hold all confidential information and trade secrets in the strictest confidence and not use, disclose, convert, or misappropriate any confidential information obtained from PPO. See Exh. A at Section II.

**Ms. Goodpasture's Employment with Benco**

28.    On February 6, 2024, Ms. Goodpasture accepted employment at Benco as a Practice Coach, Revenue Management with Benco. Ms. Goodpasture at this point was working for both PPO and Benco, with the knowledge and agreement of both companies.

29.    On February 6, 2024, as a condition of her being hired by Benco, Ms. Goodpasture signed an Employment Agreement with Restrictive Covenants (the "Benco Agreement"). A true and correct copy of the Agreement is attached hereto as Exh. B.

30.    Benco, like PPO, expends substantial time, effort, and money to attract, develop, service and maintain relationships with its customers. Benco's goodwill and business relationships with its customers are some of its most valuable assets. Information about Benco's customers— such as the size of their practice, past purchases, supply and equipment needs—constitute confidential business information and trade secrets.

31.     As a Benco practice coach, Ms. Goodpasture was privy to sensitive and confidential information about Benco's customers, obtained through the introduction and development of Benco customers to her and her permitted access to information on Benco's systems.

32.     Benco's confidential trade secret information includes, but is not limited to, customers and accounts; vendors and suppliers; employees and personnel; financial statements, pricing and profitability; business plans and systems; software and electronic services; intellectual and intangible properties; and trade secrets.

33.     Benco's confidential information and trade secrets are not publicly available, and were only available to Ms. Goodpasture during the term of her employment.

34.     Benco takes reasonable measures to protect its confidential information including by maintaining information security protocols, password protections, auditing network access, and contractually obligating employees to maintain the confidentiality of Benco's confidential information.

35.     Benco derives independent economic value from its confidential information and trade secrets being kept secret. Unauthorized access to Benco's confidential information and trade secrets would cause irreparable harm to Benco's business.

### Ms. Goodpasture's Employment Agreements

36.     As a condition and in consideration of her promotion to Team Lead at PPO and her hiring at Benco, Ms. Goodpasture signed the PPO Agreement and Benco Agreement, both of which required her to hold all confidential information and trade secrets in the strictest confidence and not use, disclose, convert, or misappropriate any confidential information obtained from Benco. See Exhs. A and B at Section II. The PPO Agreement and Benco Agreement are referred to herein collectively as the "Employment Agreements."

6

37. Ms. Goodpasture's contractual obligations under both Employment Agreements to maintain and protect the confidentiality of all confidential information and trade secrets obtained in the course of her employment extends beyond the termination of such employment. See Exhs. A and B at Section II.

38. The Employment Agreements provide protection for both PPO's and Benco's Confidential Information. The relevant confidentiality and non-disclosure provisions, which are identical in both agreements, provide:

### II. NON-DISCLOSURE: COVENANT NOT TO USE, DISCLOSE, CONVERT OR MISAPPROPIATE ALL CONFIDENTIAL INFORMATION AND TRADE SECRETS

[PPO/Benco] has sole and exclusive rights, title, and interest in said BITS,[1] their use, development, exploitation, and all benefits derived therefrom.

Said BITS, information, data and material, whether provided to me by [PPO/Benco] or by any Account, Vendor, or other third party, or developed or enhanced by me during my employment, is provided and entrusted to me as an employee and representative of [PPO/Benco]. During my employment at [PPO/Benco], and at all times thereafter, I will not divulge or disclose BITS, or permit BITS to become divulged, disclosed, to any competitor or to any third party, either directly or indirectly, intentionally or inadvertently, inevitably, by reverse engineering, or otherwise.

During my employment at [PPO/Benco], I shall take all reasonable efforts to maintain and preserve the confidentiality of BITS, including immediate notice to [PPO/Benco] of any facts or circumstances, conduct or activity which may compromise or threaten the confidentiality of BITS. I shall use BITS only in the course of fulfilling my duties and responsibilities, and in furtherance of Benco's business interests.

---

[1] In the PPO Profits Agreement, BITS is defined to mean PPO Profits Information and Trade Secrets. In the Benco Agreement, BITS is defined to mean Benco Information and Trade Secrets.

> Upon termination of my employment, I shall not remove any BITS
> from [PPO/Benco's] office, and I shall immediately return to
> [PPO/Benco] any BITS that I have possession of, access to, or
> control over. To the extent that any BITS has been disclosed or
> divulged to any third party, I shall demand its return and retrieval,
> and that it be disgorged for any other system it may have been
> entered into.

See Exhs. A and B at Section II.

39.    In each agreement, BITS includes, among other things, customer and account names, contact information, and purchasing history; vendor and supplier names, contact information, products, and costs; PPO/Benco financial information; PPO/Benco business plans and strategy; proprietary and confidential software and electronic services; intellectual property and trade secrets. See Exhs. A and B at Section I.

40.    Ms. Goodpasture's agreement with PPO contained an anti-moonlighting covenant that applied during the term of her employment. Section VI provides:

### VI. ANTI-MOONLIGHTING COVENANT

> At all times during my employment at PPO Profits, I shall not
> directly or indirectly, enter into the employ of, moonlight for, render
> services to, or provide any services that are also offered by PPO
> Profits to any customer or other third party, regardless of whether
> such activity is pursued on my own behalf of on behalf of another,
> and regardless of whether such activity is pursued for profit or
> pecuniary advantage.

Exh. A at Section VI.

41.    As part of Ms. Goodpasture's agreement with PPO, Ms. Goodpasture also agreed to non-service, non-solicitation and non-acceptance of business covenants that apply for a period of one (1) year following the termination of her employment with PPO for any reason. Sections III and IV of the PPO Agreement provide:

8

### III. NON-SERVICE COVENANT

I agree that for a period of one (1) year following termination of my employment for any reason, I will not, as an owner, manager, controller, operator, employee, representative, consultant, independent contractor or agent, sell, service, represent or otherwise do any business involving the same or substantially similar products and services as offered by Benco with any of the customers whom I serviced or whose names became known to me during my employment at PPO Profits ("PPO Profits customers").

Exh. A at Section III.

### IV. NON-SOLICITATION and NON-ACCEPTANCE OF BUSINESS COVENANT

I agree that for a period of one (1) year following termination of my employment for any reason, I will not solicit, initiate contact with, respond to inquiries from, or otherwise communicate with, either directly or indirectly, by mail, by phone, by email, by personal meeting, or by any other means, any customers whom I serviced or whose names became known to me at any time during my employment at PPO Profits ("PPO Profits customers"). My agreement "not to solicit" means that I will not, either in anticipation of my termination of employment, and for a period of one (1) year thereafter, solicit, initiate any contact with, respond to any inquiries from, or otherwise have any communication of any kind whatsoever, for the purpose of inviting, encouraging or requesting any PPO Profits customer:

(a) to transfer its business to me, to my new employer, or to any other third party; or

(b) to open a new account with me, with my new employer, or with any other third party; or

(c) to otherwise discontinue its patronage of Benco or divert its business relationship to me, to my new employer, or to any other third party.

I further agree that I will not accept, transact, or conduct any business with any PPO Profits customer which is solicited in violation of the terms of this Section IV or whose information is

> used, misappropriated, divulged, or disclosed in violation of
> Sections I and II above.

Exh. A at Section IV.

42.     Both Employment Agreements contain a duty of loyalty covenant which provides:

> I agree that at all times during my employment, I owe [PPO/Benco]
> a duty of loyalty and a duty to act in food faith. I agree that during
> my employment I will not individually, or in combination with any
> other employee, or in concert with any third party or any competitor
> of [PPO/Benco], violate or breach any terms of this agreement.

See Exh. A at Section VIII and Exh. B at Section V.

43.     The Employment Agreements both explicitly provide that any breach or reasonable anticipation of a breach of the covenants entitles PPO and Benco to "injunctive relief, as well as damages and an equitable accounting of all earning, profits and benefits arising from such violation, which rights shall be cumulative and in addition to any rights or remedies to which PPO [or Benco] Profits may be entitled." Further, the Employment Agreements provide that any breach or anticipated breach by Ms. Goodpasture will cause irreparable harm to PPO and Benco, and that monetary damages will be inadequate to remedy such a breach. See Exh. A at Section IX and Exh. B at Section VI.

44.     Ms. Goodpasture has specifically consented to "the issuance of a temporary restraining order and a preliminary and permanent injunction" to protect Benco's and PPO's rights under the Employment Agreements. See Exh. A at Section IX and Exh. B at Section VI.

45.      The Employment Agreements also provide for the recovery of costs and reasonable attorneys' fees by Benco and PPO incurred in the enforcement of the agreements. See Exh. A at Section XII and Exh. B at Section IX.

**Ms. Goodpasture's Termination and Misappropriation of the Companies' Trade Secrets**

46.     On January 23, 2026, Ms. Goodpasture met with PPO and Benco Human Resources to discuss recent performance concerns and disciplinary actions.

47.     On January 27, 2026, Ms. Goodpasture was sent an invitation for a virtual meeting with her PPO manager on January 30, 2026.

48.     On January 30, 2026, Benco and PPO terminated their employment relationship with Ms. Goodpasture.

49.     From January 27, 2026 through January 30, 2026, Ms. Goodpasture downloaded over 13,000 documents from the PPO G-Suite ("Relevant Files"). These files include sensitive client information, onboarding documents for new clients, training materials and videos, the complete PPO customer list, revenue overviews, templates, fee schedules, meeting notes, and insurance and claims information for PPO clients. On February 2, 2026, Benco, on behalf of PPO, performed an administrative audit of Ms. Goodpasture's activity on G-Suite revealing Defendant's misconduct.

50.     A review of Ms. Goodpasture's PPO e-mail account indicated that Ms. Goodpasture deleted all but three emails in her inbox folder and deleted all messages in her sent folder and trash folder in the week leading up to her departure.

51.     Following Ms. Goodpasture's termination, Benco learned that Ms. Goodpasture started her own company, Dental Billing Hub, on January 5, 2025. Dental Billing Hub provides similar or substantially similar services as the services that Ms. Goodpasture provided in her position as team lead with PPO.

52.     By knowingly and intentionally misappropriating and using PPO and Benco Confidential Information and soliciting PPO and Benco Customers, Ms. Goodpasture has breached

her Employment Agreements, harmed Plaintiffs and their businesses, and unlawfully taken business away from Plaintiffs.

53.    Ms. Goodpasture attempted to hide evidence of misconduct by deleting her email folders. Ms. Goodpasture's attempted deception demonstrates that her misconduct was intentional and malicious.

54.    On February 23, 2026, counsel for PPO and Benco sent a letter to Ms. Goodpasture reminding her of the post-employment obligations in the Employment Agreements.

55.    Ms. Goodpasture responded by e-mail the same day, stating "I have not withheld, retained, or misused company property."

56.    PPO's and Benco's post-termination audit reveals Ms. Goodpasture's statement was not true.

57.    Upon information and belief, Ms. Goodpasture has violated Sections II, III, IV, VI and VIII of the PPO Agreement and Sections II and V of the Benco Agreement by misappropriating and using Confidential Information she learned and obtained while employed at PPO and Benco and initiating contact with PPO and Benco Customers for the purpose of diverting business from PPO and Benco to herself.

58.    Upon information and belief, Ms. Goodpasture is soliciting PPO and Benco Customers, directly and indirectly, to divert business to herself.

59.    As an example, Ms. Goodpasture solicited a customer from PPO and Benco on behalf of her company, Dental Billing Hub. As a result of this solicitation, Ms. Goodpasture has been providing competing services since at least February of 2025, while being employed by PPO and Benco.

60.     An audit of Ms. Goodpasture's G-Suite, conducted after her termination, revealed the Ms. Goodpasture and DBH has prepared and sent invoices for payment from DBH directed to a customer of Benco and/or PPO ("Customer A").

61.     Ms. Goodpasture also used her DBH email address to access the internal network of Customer A in March of 2025, while employed at PPO and Benco.

62.     Documentation recovered from Ms. Goodpasture's PPO G-Suite files indicate that Customer A's system was accessed using the email address "info@dentalbillinghub.com" and accessed from a device named "Bre's MacBook Pro."

63.     A review of Ms. Goodpasture's PPO G-Suite conducted after her termination revealed a draft template engagement letter for DBH, which contemplates the provision of services identical to those offered by PPO, and which were part of Ms. Goodpasture's duties when she was employed by Plaintiffs.

64.     A review of Ms. Goodpasture's G-Suite files conducted after her termination also revealed draft engagement letters between DBH and two potential customers of Benco and/or PPO ("Customer B" and "Customer C").

65.     As of the date of this Complaint, upon information and belief, Ms. Goodpasture has misappropriated Benco and PPO's trade secrets and continues to violate her post-employment obligations required by her Employment Agreements by possessing and using Benco's and PPO's confidential information and trade secrets and soliciting clients that she came to know while employed at Benco, and using confidential and trade secret information about these clients that she learned while employed at Benco.

## COUNT I - VIOLATION OF THE DEFEND TRADE SECRETS ACT
### (Benco and PPO v. Briana Goodpasture)

66.    Benco incorporates paragraphs 1 through 65 of this Complaint herein by reference as if the same were fully set forth at length.

67.    The Defend Trade Secrets Act ("DTSA") creates a private right of action in federal court for the misappropriation of trade secrets. *See* 18 U.S.C. §§ 1831, *et seq*.

68.    The information downloaded by Ms. Goodpasture contains confidential trade secrets related to products and services that are used in interstate commerce.

69.    PPO's and Benco's products and services are used in interstate and foreign commerce.

70.    PPO and Benco are the owners of trade secrets including, but not limited to, their sensitive client information, onboarding documents for new clients, training materials and videos, customer lists, revenue overviews, templates, fee schedules, meeting notes, and insurance and claims information for PPO clients.

71.    Ms. Goodpasture misappropriated over 13,000 files from G-Suite.

72.    Ms. Goodpasture created her own company to offer similar services to dental companies.

73.    Ms. Goodpasture has misappropriated PPO's and Benco's trade secrets by downloading them from G-Suite.

74.    As a direct and proximate result of Ms. Goodpasture's wrongful conduct described above, PPO has suffered and/or will suffer actual damages, including loss of business and profits and goodwill, in an amount to be proven at trial.

75.    Injunctive relief pursuant to 18 U.S.C. § 1836(b) is required to prevent further misappropriation of PPO's and Benco's valuable trade secrets.

## COUNT II - VIOLATION OF THE
## PENNSYLVANIA UNIFORM TRADE SECRETS ACT
### (Benco and PPO v. Briana Goodpasture)

76. Benco incorporates paragraphs 1 through 75 of this Complaint herein by reference as if the same were fully set forth at length.

77. The Pennsylvania Uniform Trade Secrets Act permits courts to enjoin actual or threatened misappropriation of the trade secrets, and to award damages for such misappropriation. 12 Pa. C.S. §§ 5303, 5304.

78. Ms. Goodpasture and DBH misappropriated Plaintiffs' trade secrets by downloading over 13,000 confidential files from G-Suite in the final week of her employment with Benco and PPO Profits.

79. The information that Ms. Goodpasture and DBH misappropriated includes sensitive client information, onboarding documents for new clients, training materials and videos, the complete PPO customer list, revenue overviews, templates, fee schedules, meeting notes, and insurance and claims information for PPO clients, which Plaintiffs have taken reasonable measures to keep secret, and which derives economic value to Plaintiffs from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure of use. Accordingly, the downloaded documents contain Plaintiffs' trade secrets.

80. Ms. Goodpasture's conduct indicates that she intends to further misappropriate Plaintiffs' trade secrets.

81. As a direct and proximate result of Ms. Goodpasture's wrongful conduct described above, PPO has suffered and/or will suffer actual damages, including loss of business and profits and goodwill, in an amount to be proven at trial.

15

82.     Injunctive relief is required to prevent further misappropriation of Benco's valuable trade secrets.

## COUNT III – CONVERSION
### (Benco and PPO v. Briana Goodpasture)

83.     Plaintiffs incorporate paragraphs 1 through 82 of this Complaint herein by reference as if the same were fully set forth at length.

84.     Ms. Goodpasture obtained the confidential information contained in the Relevant Files as part of Ms. Goodpasture's confidential relationship with PPO and Benco.

85.     By downloading this closely held confidential information, Ms. Goodpasture has used this information to Plaintiffs' detriment.

86.     As a direct and proximate result of Ms. Goodpasture's wrongful conduct described above, PPO and Benco have suffered and/or will suffer actual damages, including loss of business and profits and goodwill, in an amount to be proven at trial.

## COUNT IV - BREACH OF CONTRACT
### (PPO v. Briana Goodpasture)

87.     Plaintiffs incorporate paragraphs 1 through 86 of this Complaint herein by reference as if the same were fully set forth at length.

88.     The PPO Offer Letter with Restrictive Covenant and Confidentiality Agreement is a valid and enforceable contract between Ms. Goodpasture and PPO.

89.     The PPO Agreement was supported by valuable consideration. Ms. Goodpasture's execution of the agreement was a condition of her promotion to "Team Lead."

90.     In consideration of Ms. Goodpasture's promotion and increase in compensation, Ms. Goodpasture was required to hold all confidential information obtained from PPO in the strictest confidence and not divulge or reveal any confidential information obtained from PPO.

91.     As part of the PPO Agreement, Ms. Goodpasture agreed to "not remove any BITS from PPO Profits' office, and … immediately return to PPO Profits any BITS that I have possession of, access to, or control over." See Exh. A at Section II.

92.     By surreptitiously downloading PPO's confidential information and trade secrets, and by failing to return such material to PPO upon her separation from the company, Ms. Goodpasture has breached her agreement with PPO.

93.     As part of the PPO Agreement, Ms. Goodpasture agreed not to "render services to, or provide services that are also offered by PPO Profits to any customer or third party…" See Exh. at Section VI.

94.     The PPO Agreement also required that Ms. Goodpasture "for a period of one (1) year following a termination of my employment for any reason . . . will not, as an owner, manager, controller, operator, employee, representative, consultant, independent contractor or agent sell, service, represent or otherwise do any business involving the same or substantially similar products and services as offered by PPO Profits." See Exh. A at Section III.

95.     Defendant's PPO Agreement further required that Defendant "for a period of one (1) year following termination of my employment for any reason, [Defendant] will not solicit, initiate contact with, respond to inquiries from, or otherwise communicate with, either directly or indirectly, by mail, by phone, by email, by personal meeting, or by any other means, any customers whom [Ms. Goodpasture] serviced or whose names became known to [Ms. Goodpasture] at any time during my employment at PPO Profits." See Exh. A at Section IV.

96.     By starting her own company, offering similar or substantial services as PPO, and soliciting PPO's customers, Ms. Goodpasture has breached her agreement with PPO.

97.    As a consequence of the foregoing, PPO has suffered and will continue to suffer irreparable harm and injury.

98.    As a direct and proximate result of Ms. Goodpasture's wrongful conduct described above, PPO has suffered and/or will suffer actual damages, including loss of business and profits and goodwill, in an amount to be proven at trial.

## COUNT V - BREACH OF CONTRACT
### (Benco v. Briana Goodpasture)

99.    Benco incorporates paragraphs 1 through 98 of this Complaint herein by reference as if the same were fully set forth at length.

100.    The Benco Employment Agreement with Restrictive Covenants is a valid and enforceable contract between Defendant and Benco.

101.    The Benco Agreement was supported by valuable consideration. Ms. Goodpasture's execution of the agreement was a condition of the commencement of her employment with Benco.

102.    Ms. Goodpasture contractually agreed to hold all confidential information obtained from Benco in the strictest confidence and not divulge or reveal any confidential information obtained from Benco.  See Exh. B at Section II.

103.    The Employment Agreement required Ms. Goodpasture to "not remove any BITS from Benco's office, and … immediately return to Benco any BITS that [Ms. Goodpasture has] possession of, access to, or control over."  See Exh. B at Section II.

104.    By downloading Benco's confidential information and trade secrets, and by failing to return such material to Benco upon her separation from the company, Ms. Goodpasture has breached her agreement with Benco.

105.    As a consequence of the foregoing, Benco has suffered and will continue to suffer irreparable harm and injury.

106.    As a direct and proximate result of Ms. Goodpasture's wrongful conduct described above, Benco has suffered and/or will suffer actual damages, including loss of business and profits and goodwill, in an amount to be proven at trial.

### COUNT VI – BREACH OF FIDUCIARY DUTY AND DUTY OF LOYALTY
### (Benco and PPO v. Briana Goodpasture)

107.    Plaintiffs incorporate paragraphs 1 through 106 of this Complaint herein by reference as if the same were fully set forth at length.

108.    Ms. Goodpasture, as an employee of Benco and PPO, was an agent of Benco and PPO. As an agent, Ms. Goodpasture owed PPO and Benco a duty of loyalty.

109.    Ms. Goodpasture breached her duty to PPO and Benco by her failure to act in good faith and solely for Plaintiff's benefit. In particular, during her term of employment with Benco, Ms. Goodpasture created and operated her own company providing similar or substantially similar services as PPO and Benco, all while holding herself out as a loyal PPO and Benco employee and being compensated by both companies.

110.    Ms. Goodpasture used Benco's confidential information to solicit at least one of PPO and Benco's customers, Customer A, for her own competing company.

111.    Ms. Goodpasture acted solely for her own benefit and against the interests of Benco and PPO.

112.    Ms. Goodpasture's breach of her fiduciary duties resulted in damages being incurred by PPO and Benco.

113.   Ms. Goodpasture's breach of fiduciary duties owed to PPO and Benco caused PPO and Benco to suffer and/or will suffer actual damages, including loss of business and profits and goodwill, in an amount to be proven at trial.

### COUNT VII – TORTIOUS INTERFERENCE WITH BUSINESS RELATIONSHIPS
### (Benco and PPO v. Briana Goodpasture)

114.   Plaintiffs incorporate paragraphs 1 through 113 of this Complaint herein by reference as if the same were fully set forth at length.

115.   Plaintiffs have a contractual relationship with its customers, including Customer A.

116.   Ms. Goodpasture acted intentionally to harm PPO and Benco by interfering with the contractual relationship between PPO and Benco and Customer A.

117.   Ms. Goodpasture, knowing of this relationship, intentionally and without privilege or justification, used PPO's and Benco's confidential information to coerce Customer A to engage in a business relationship with Dental Belling Hub rather than with PPO.

118.   Ms. Goodpasture sought to advance her own interests by interfering with Plaintiffs' contract. As a result of the foregoing, Benco has suffered and will continue to suffer irreparable harm and injury.

119.   As a direct and proximate result of Ms. Goodpasture's wrongful conduct described above, Benco has suffered and/or will suffer actual damages, including loss of business and profits and goodwill, in an amount to be proven at trial.

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs, Benco and PPO, hereby demand judgment and relief in its favor, and against Defendant, Briana Goodpasture, on all causes of action as follows:

a.   A temporary, preliminary, and permanent injunction:

     i.   requiring Ms. Goodpasture to return all originals and copies of all documents, information, and other materials (including electronically stored information) in her possession, custody, or control that were provided to Ms. Goodpasture or created by Ms. Goodpasture during the course of her employment by PPO and Benco;

    ii.   enjoining Ms. Goodpasture from using or disclosing any of PPO's or Benco's confidential, proprietary, or trade secret information;

   iii.   enforcing the non-service, non-solicitation, non-acceptance of business covenants in the PPO Agreement;

   iv.   enforcing the non-disclosure, duty of loyalty business and other protective covenants in the PPO Agreement and the Benco Agreement;

    v.   enjoining Ms. Goodpasture from operating Dental Billing Hub;

   vi.   ordering Ms. Goodpasture to immediately provide Benco and PPO with all of her personal electronic devices, including, but not limited to, the device named "Bre's MacBook Pro" which was used to access Customer A's system, so that Plaintiffs can conduct a forensic image and search of and removal from the devices all of Plaintiffs'' trade secrets and confidential information.

b.  For actual and/or liquidated damages in an amount to be proven at trial, to the extent such damages are capable of being calculated at that time, including the disgorgement of compensation paid to Ms. Goodpasture while in violation of the terms of the Employment Agreements;

a.  For an equitable accounting of all earnings, profits and benefits arising from Ms. Goodpasture's violation of the Employment Agreements;

b.  For pre- and post-judgment interest as allowed by law;

c.  For punitive damages and/or exemplary damages;

d.  For attorneys' fees and costs incurred in connection with this action; and

e.  For such other and further relief as the Court may deem equitable, just, and proper.

Dated: February 16, 2026                    Respectfully submitted,


                                            */s/ Mark A. Kasten*
                                            Mark A. Kasten (PA ID No. 316387)
                                            Joseph A. Dougherty (PA ID No. 50193)
                                            Frances R. McDermott (PA ID No. 330573)
                                            BUCHANAN INGERSOLL & ROONEY PC
                                            50 South 16th Street, Suite 3200
                                            Philadelphia PA 19102-2555
                                            Telephone: (215) 665-8700
                                            Facsimile: (215) 665-8760

                                            *Attorneys for Plaintiffs, Benco Dental Supply Co.
                                            and Birch 59 PPO LLC, d/b/a PPO Profits*

## <u>VERIFICATION</u>

I hereby verify that the statements contained in the attached Complaint are true and correct to the best of my knowledge, information and belief. I understand that false statements herein are made subject to the penalties of Title 18 Pa. C.S.A. § 4904, relating to unsworn falsification to authorities.

Dated:  February 16, 2026

Anna DuHamel, on behalf of
Benco Dental Supply Co. and Birch 59 PPO
LLC, d/b/a PPO Profits